**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENVILLE**

| | |
|---|---|
| **JANE DOE, as next friend and on behalf** ) | |
| **of JOHN DOE, a minor, and** ) | |
| **JANE ROE, as next friend and on behalf** ) | |
| **of JOHN ROE, a minor,** ) | **Jury Demand** |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **THE WASHINGTON COUNTY** ) | |
| **DEPARTMENT OF EDUCATION,** ) | |
| **Defendant.** ) | |
| ) | |

---

## COMPLAINT

---

Plaintiffs Jane Doe, as next friend and on behalf of John Doe, a minor, and Jane Roe, as next friend and on behalf of John Roe, a minor, for their causes of action against the Defendant Washington County Department of Education, state as follows:

## PARTIES AND JURISDICTION

1. This is a civil action for damages for injuries sustained by Plaintiffs John Doe and John Roe as a result of the acts, omissions, and deliberate indifference of the Washington County Department of Education with regard to hazing which included sexual harassment, sexual assault of John Doe and John Roe, and the Defendant's response, or lack thereof, in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. ("Title IX"), 42 U.S.C. § 1983, the Tennessee Governmental Tort Liability Act, T.C.A § 4-20-201 *et seq*. and 2000(d) of Title 42 of the United States Code, Title VI of the Civil Rights Act of 1964. "Jane Doe," "John Doe, "Jane Roe," and "John Roe" are

pseudonyms used because these claims challenge government activity, the claims compel the plaintiffs to disclose information of the utmost intimacy, including sexual abuse and sexual assault while being hazed by members of the football team, and the plaintiffs are children. Thus, the factors set forth by the Sixth Circuit in *Doe v. Porter,* 370 F.3d 558, 560 (6th Cir. 2004) have been met and the Plaintiffs' privacy interests substantially outweigh the presumption of open judicial proceedings.

2. This is a civil action for damages for injuries sustained by Plaintiffs John Doe (hereafter "J.D.") and John Roe (hereafter "J.R.") as a result of the acts, omissions, and deliberate indifference of the Washington County Department of Education with regard to hazing which included the sexual abuse of minors. A motion to proceed by pseudonym has been filed contemporaneously with this Complaint. The Plaintiffs are all residents of Washington County, Tennessee.

3. At the time of the facts complained of herein, J.D. and J.R. were athletes at Daniel Boone High School,and freshman members of the school's football team and wrestling team in the fall semester of 2022.

4. The Defendant Washington County Department of Education ("WCDE") is the legally established county authority of the State of Tennessee to operate the public schools of Washington County, Tennessee. Daniel Boone High School ("DBHS") is therefore owned, managed and controlled by the Defendant. The Defendant is situated in Washington County, Tennessee, which is within the Eastern District of Tennessee. The Defendant is a recipient of federal funds.

5. This court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, and 2000(d) of Title 42 of the United States Code, Title VI of the Civil Rights Act of 1964. (1983?)

6. This Court further has supplemental jurisdiction over all other claims that are so related to the claims and the actions within the original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. § 1367(a).

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendant School is located in this district and the acts and omissions alleged of herein occurred within this district.

8. The Defendant's policy and practice of repeated failure to monitor and to report sexual assaults within their schools creates a constitutionally cognizable claim giving rise to liability under 42 U.S.C. § 1983. The Defendant failed to properly report the incidents to law enforcement and proper authorities as required by T.C A. § 49-6-4301, § 37-1-403 and §37-1-605

9. The Defendant had an obligation to create, publish and report to the Tennessee Department of Education its procedures to prevent and report bullying and sexual assault. As of this writing, no such reports have been located and made available by the Department. The Defendant failed to train its employees upon its policies. This failure to train is among the proximate causes of the injuries sustained by the minor Plaintiffs.

## ALLEGATIONS OF FACT

10. Hazing within football teams has an extensive, infamous history, replete with instances of humiliation, bullying, and even physical harm. This dangerous tradition, cloaked under

3

the guise of camaraderie or rites of passage, poses an alarming risk to student-athletes, detrimentally affecting their mental, emotional, and physical well-being. Studies have consistently illuminated the grave impacts of hazing, including the potential for serious injury, lasting psychological trauma, and, in the most extreme cases, fatality.

11. Notwithstanding the known dangers and mounting public outcry against such harmful practices, the Defendant and its administrators at the Daniel Boone High School failed to take appropriate action to safeguard its student athletes from hazing that it knew was occurring, or in the exercise of reasonable diligence, should have known was occurring by members of the Daniel Boone High School football team. The school's negligence and abject disregard for the welfare of its students did not merely allow a culture of hazing to persist; it tacitly endorsed such behavior, thus establishing an environment ripe for the physical assault, emotional distress, and general harassment suffered by two students, J.D. and J.R., during the 2022-2023 school year. This gross oversight represents an inexcusable breach of the school's fundamental duty of care and constitutes a tortious failure on its part to ensure the safety and well-being of its students.

12. Hazing is an extraordinary activity because when it occurs often enough, as it did within the halls of the fieldhouse at Daniel Boone High School, it becomes perversely ordinary from the inhuman desensitization of those who engage in it, as well as those who allow it to occur. The normalization of such harmful practices is not only intolerable, it demonstrates a stark violation of the duty of care owed by the school to its students. Although it should be the duty of teachers and coaches, as educators and mentors, to

eradicate such normalized and unnecessary violence, it was the Defendant's legal obligation to protect its students from these unacceptable risks.

13. Plaintiffs believe and therefore aver that the WCDE had actual knowledge of the hazing and the danger of hazing, taking place within Boone High School in its athletic programs. The minor Plaintiffs were advised by other students that the overtly sexual hazing they were experiencing was merely part of what a freshman athlete must endure to participate. Other, older boys, including the primary assailant, had experienced similar behavior in prior years. Locker rooms were left unsupervised. The county and its school system provided no training for their teachers and staff to deal with sexual contact among their pupils. Many of the acts of bullying, including the most egregious sexual acts, occurred in the locker room in close proximity to the coaches.

14. Jeremy Jenkins is the Head Coach of Daniel Boone High School, as well as an Assistant Principal. In this dual role, he was charged with supervising and disciplining Daniel Boone High School Students, both on and off the football field.

15. The Daniel Boone High School Football team consists of varsity and junior varsity teams. Both varsity and junior varsity football players change into their football uniforms after school at the Daniel Boone fieldhouse. The locker room has space designated for varsity players, who were seniors and some starters. The junior varsity lockers for freshman, sophomores and juniors, are on the other side of some bathrooms. Both locker areas are adjacent to the coaches' offices, separated by one wall.

16. The coaches' office is in such close proximity to the locker room that any commotion in either locker room can be heard in the other locker room and in the coaches' offices.

Plaintiffs aver that the Daniel Boone football coaches had notice that the acts of assault, hazing, and bullying alleged herein were taking place within the locker rooms because they could hear them taking place. Yet, these coaches still failed to take any action to stop these assaults or prevent future assaults, despite being obligated to supervise these students at all times by WCDE policies requiring such supervision.

**J.D.**

17. J.D. was a pupil registered at Boone High School in Washington County, Tennessee in the fall semester of 2022. Beginning in July, 2022, J.D. was victimized by boys on the football team, principally Adrien Tilson. On August 19, 2022, Tilson sat naked from the waist down upon J.D.'s face while forcing or attempting to force his genitals into his mouth. This happened in the presence of several boys, who witnessed this act of sexual humiliation. Tilson then offered to spare him the abuse for a week if he would permit Tilson to strike him in his testicles as hard as he could with a broom handle. J.D., having no alternative, complied.

18. Tilson crafted a whip, which the boys called "nunchucks" and beginning on or about August 22, 2022, began beating the freshman boys, including both plaintiffs.

19. Tilson painted a penis on J.D.'s face. In September he sat on J.D., stole his phone and beat him repeatedly. On or about September 30, 2022, Tilson cut J.D. with a switchblade knife. This created an inch-long cut in his right forearm, which produced significant bleeding. This happened on a trip to Knoxville for a varsity football game. The coaching staff never asked J.D. what had happened or offered assistance of any kind.

20. On October 14, 2022, the varsity team played Tennessee High School in Bristol. Tilson continued his practice of stealing J.D.'s possessions and beating him. He threw one of J.D.'s shoes out of a window. Coaches were present on the bus.

21. Throughout the fall, Tilson and others called J.D. racist names, including "Osama Bin Laden," because J.D.'s father is a Muslim of Middle Eastern descent. Tilson pinned J.D. down and "dry humped" him in front of teammates on the floor of the Hampton High School visitor's field house.

22. On or about November 4, 2022, Tilson, with the assistance of others, choked J.D. with a belt. He fixed a cloth to his face and poured water on it in the fashion of the torture technique called "water boarding."

23. The football coaches knew that J.D. was being harassed because of his Middle Eastern descent and Muslim faith.

24. The Defendant, in deliberate indifference to J.D.'s Title VI complaint or the harassment he faced as a result of his Middle Eastern descent and Muslim faith, failed to investigate his Title VI complaint at all.

**J.R.**

25. J.R. was a student at Daniel Boone High School High School in the fall semester of 2022.

26. J.R. witnessed the abuse of J.D.. Seeing Tilson forcing his scrotum into S.A's mouth was shocking and repulsive. He experienced the repetitive physical abuse at the hands of Tilson and other upperclassmen.

27. On or about September 12, 2022, J.R. fought back and struck Tilson with a dustpan to deter an attack. Tilson chased him around the locker room and placed him in a chokehold.

He dragged J.R. into a corner of the junior varsity locker room and kept him in a chokehold for approximately ten minutes.

28. On or about September 30, 2022, J.R. was held down with bags placed over his head and poked on his buttocks and legs with a broken high jump pole with broken fiberglass on the end. The principle abuser was an upper class teammate, B.J. He was then forced into a corner by a group of boys and told he could not leave. Another upperclassman, M.D., lowered his pants and began backing into him with naked buttocks. When J.R. moved to avoid contact, the boys threw water on him and Tilson jabbed him with a broomstick.

29. J.R. personally witnessed the cut to the forearm suffered by J.D. and saw the blood running down his arm.

30. On or about October 3 through 6 or 13, 2022, after practice, M.D. forced J.R.'s head between his legs and humped him with his naked genitals.

31. On or about October 24, 2022, Tilson had other boys hold down J.R. and another freshman teammate, H.S., and shook his naked buttocks in their faces.

32. On or about October 25 or 26, Tilson and upper class teammate H.E. put on latex gloves, pinned J.R. on a couch and pulled his pants down. They told him they intended to conduct a prostate exam, but did not complete the abuse.

33. On or about October 22 through 27, Tilson used a small pole wrapped with a shoelace to whip junior varsity football players. J.R. witnessed Tilson attempting to force his bare genitals onto J.D.. On October 27, he recorded on his phone Tilson dry-humping J.D. in a locker room with other players at the Hampton football game. On October 31, 2022, J.R. quit the football team to free himself of the ongoing harassment and assault.

34. On another occasion, Tilson pinned J.R. to the ground, rubbed his naked genitals against his forehead, and attempted to force his genitals into J.R.'s mouth, as he had done to J.D. This was witnessed by teammate H.S.

35. As a direct and proximate result of the hazing, bullying, harassment and assaults, J.R. quit the football team and both J.R. and J.D.'s grades have suffered.

### The Defendant's Culture of Hazing

36. Administrators at the Daniel Boone High School have failed to take the appropriate steps to eliminate hazing for so long, that freshman players are expected to simply endure it as part of a humiliating and dangerous rite of passage. Despite policies being established to eliminate this despicable practice from Tennessee schools, Daniel Boone administrators negligently failed to implement them and were deliberately indifferent to known acts of sexual assault and harassment by members of its football team. For example, J.D. was told repeatedly that "this is what happens to freshmen."

37. Because the Defendant has allowed a culture of hazing to fester in its high school, when J.D. was interviewed by an Assistant District Attorney, he told her that he thought the assaults were just something that he had to endure to be a part of the team.

38. When J.R. left the football team to join the DBHS wrestling team, he participated in a pre-season wrestling match that was attended by J.D. on November 5, 2022. J.R. and J.D. confided in members of the wrestling team and shared what they had endured by other members of the football team. Members of the wrestling team encouraged J.D. and J.R. to report the assaults because the hazing and assaults were prevalent and had been considered a "rite of passage" for freshmen for many years.

39. On the evening of November 5, 2022, upper class teammate A.R. published on Tik Tok a video of a sexual assault of Tilson forcing his bare genitals into the face of teamate J.H. The video included Tilson choking J.D. with a belt and waterboarding him.  When J.R. returned home that evening, he began revealing the assaults he had endured to his parents, causing Jane Roe to call Jane Doe to inform her about what she had learned.

40. On the morning of Sunday, November 6, 2022, Jane Roe emailed DBHS Athletic Director Danny Good and Head Coach Jeremy Jenkins about the assaults, providing DBHS Principal Tim Campbell contacted Jane Roe and requested a copy of the video and pictures of the assaults that she had received from J.R.  Principal Campbell said he would speak with J.R. and J.D. on the morning of November 7, 2022 because he did not want to "falsely accuse" any of the perpetrators of the assaults that Jane Roe had identified in her email.

41. On the morning of November 7, 2022, J.R. and J.D. were interviewed by Principal Campbell, along with A.R. and the assailants, Tilson, H.E. and M.D..  J.R. informed Campbell and Coach Danny Good about the sexual assault committed by M.D. by M.D. placing J.R.'s head between his legs and then rubbed his penis on the back of J.R.'s head.

42. The same morning, Jane Roe, her husband, and Jane Doe filed a report with DCS.  They also went to the Washington County Sheriff's Office and filed a police report.  On the evening of November 7, 2022,, J.R. and J.D. were separately interviewed at their homes about the sexual assaults by the Washington County Sheriff's Office Investigators and DCS.

43. In addition to hazing having historical prevalence at Daniel Boone High School, the Plaintiffs learned of additional acts that demonstrate the Defendant's knowledge of it, including the following:

   a. A sophomore football player whose mother told Jane Roe that he had been assaulted when he was a freshman;

   b. Information from TBI Agent Lowe that one of the players who was questioned admitted that he had been assaulted when he was a freshman;

   c. Information from TBI Agent Lowe from a player who said that he had given Tilson's nunchucks that he used to beat freshman (including J.D. and J.R.), to one of the football coaches. Tilson's nunchucks were made of metal pipes or pieces of wood tied together with rope, that he used to beat freshman (including J.D. and J.R.). At a minimum, the coach's possession of Tilson's improvised weapon to the coach put him on actual notice of harassment, bullying, and assaults taking place

   d. Information taken from Title IX interviews about Tilson terrorizing other children in his grade, and that he had been that way for a long time and had a violent propensity known to the administrators at Daniel Boone;

   e. Other students that were interviewed stated that the hazing "happened so much you get used to it" and that players did not complain to the coaches because it was futile and treated as "just a thing to expect from older players."

44. Had the coaches followed the WCDE policies pertaining to their responsibilities as coaches, they would have certainly learned about the assaults or prevented them entirely by their presence and supervision of these children.

45. In addition, the coaches' offices are so close to where the assaults occurred in the locker room, that they would have heard the assaults taking place and simply not bothered to check and see what was going on, in dereliction of their duty to supervise these children.

46. The sexual harassment was so pervasive at DBHS, occurring daily and in open and obvious ways, it is inconceivable that the assistant principal of DBHS, who is also the head football coach, did not have actual knowledge of the bullying, harassment, and sexual assaults on J.D. and J.R., and failed to take action sufficient to protect them from further abuse.

47. Although the Defendant removed Tilson from the team and the school, the Defendant did not remove two other harassers, M.D. and B.J., and they therefore remained in proximity to J.D. and J.R.

48. M.D.'s assault of J.R. was either not investigated by the Defendant or it was omitted from the Defendant's investigative report, which is further evidence of the Defendant's deliberate indifference to peer-on-peer sexual harassment and assault.

49. Because of the Defendant's inaction with M.D., he told other DBHS students about pulling down J.R.'s pants in the locker room, as well as the attempted "prostate exam" committed by H.E. and Tilson.

50. According to the Administrative Law Judge handling the complaints, the interviews of the coaches should have been released to the Complainants, but were not. Plaintiffs Jane

Doe and Jane Roe requested, but were not provided copies of the interviews with the coaches. Because the families were deprived of the benefit of the interview with the coaches, a reasonable inference can be drawn, and Plaintiffs therefore aver, that these interviews will also prove that the Defendant had prior knowledge of peer-on-peer harassment occurring among members of the football team.

## CAUSES OF ACTION

### COUNT I: VIOLATION OF TITLE IX

### DELIBERATE INDIFFERENCE TO SEXUAL HARASSMENT AND ASSAULT

51. Title IX of the Education Amendments Act of 1972 prohibits discrimination on the basis of sex in any educational program or activity receiving federal financial assistance. It's prohibition of discrimination on the basis of sex includes sexual harassment and peer-on-peer sexual abuse.

52. The Defendant is a program that receives Federal Financial participation and must therefore comply with Title IX's requirements. The harassment occurred in the funding recipient's programs or activities.

53. J.D. and J.R. were subjected to severe, pervasive, and objectively offensive harassment on the basis of sex by older students who were also members of the Defendant's football team.

54. The harassment described herein was of a sexual nature, including acts of attempted sodomy with a pole, threatened and attempted "prostate exams," simulated sex acts, multiple sexual assaults and acts of sexual degradation as a form of hazing, which all constitute acts that are inherently sexual in nature. Because this harassment is of a sexual

nature, it constitutes harassment on the basis of J.D. and J.R.'s sex or gender for purposes of Title IX.

55. This severe, pervasive, and objectively offensive harassment caused J.D. and J.R. to be deprived of educational opportunities and benefits by altering the terms and conditions of their education, including, without limitation:

   a. By negatively impacting their grades and overall academic performance due to their distress and missed classes;

   b. Limiting J.D. and J.R.'s participation in school activities, clubs, and sports teams to avoid the harassers, thus denying them the full benefit of the school experience and also causing harm to their scholarship prospects;

   c. Decreased concentration and learning ability due to the emotional distress caused by the harassment;

   d. By negatively impacting their education from the emotional and psychological impact of the hazing and assaults that took place, requiring treatment from mental health professionals;

   e. By harming their reputations and allowing false rumors to damage J.D. and J.R.'s social standing and reputation, both within the school and outside, which has impacted their academic and social experiences at Daniel Boone High School;

   f. The harassment and hazing caused J.D. and J.R. to experience social isolation from the persistent harassment, including causing J.R.'s withdraw from the football team, as well as the avoidance of their peers because of the harassment

they faced, causing a negative impact on their social development, which is a crucial part of their overall education;

56. The Defendant was aware of, and had actual knowledge of, the student-on-student harassment. In addition to their knowledge of prior acts of hazing, it is reasonable to infer that they had actual knowledge of the assaults because of the prevalence of the harassment and the external signs of it, including, at a minimum, the cut that Tilson made to J.D.'s arm with a switchblade and drawing a penis on J.D.'s face, Tilson's possession and use of weapons and "nunchucks" at school, and the Defendant's culture of tolerating hazing for years.

57. Despite their offices being directly adjacent to the locker room where the hazing and assaults routinely occurred, the Defendant's coaches failed to investigate the clear and audible signs and sounds of distress, struggle, and commotion emanating from the junior varsity locker room. This close proximity and regular exposure to the sounds of the hazing created actual knowledge on the part of the Defendant of the ongoing harassment.

58. Even with actual knowledge of the ongoing hazing, the Defendant's response, or lack thereof, was clearly unreasonable. The Defendant had in place specific policies requiring supervision of student athletes, yet the Defendant's coaches failed to uphold these policies. Their inaction, despite the audible signs of distress and their responsibilities under the school's policies, demonstrate a clear and egregious disregard for the welfare of the Plaintiffs that amounts to deliberate indifference of their rights under Title IX.

59. The coaches at Daniel Boone High School allowed the hazing and harassment to occur because they considered it a "rite of passage" for freshmen, indicating that it has become a culturally accepted behavior season after season.

60. The Defendant failed to adequately investigate or remedy the reported harassment, including a failure to take appropriate action against J.D. and J.R.'s bullies, despite its awareness of the ongoing harassment, which constitutes deliberate indifference.

61. The Defendant's response, or lack thereof, to the harassment was clearly unreasonable.

62. The Defendant failed to inform J.D. and J.R.'s parents of the assaults they were facing, which resulted in their parents blindly sending their children back into harm's way at school, day after day, which amounts to deliberate indifference.

63. As a direct and proximate result, the Defendant has violated Title IX and is liable to J.D. and J.R. for all injuries and damages caused by its deliberate indifference to known harassment.

**COUNT II:  VIOLATION OF TITLE VI**

**NATIONAL ORIGIN AND RELIGIOUS DISCRIMINATION**

64. J.D. has and had a protected right to be free from discrimination and harassment under Title VI of the Civil Rights Act of 1964.

65. J.D., a student of Middle Eastern descent and of the Islamic faith, was routinely subjected to racial and religious harassment by his peers at the Defendant's high school. His peers frequently targeted him with racist epithets and derogatory references, including derogatory references to Osama Bin Laden, due to his race, color, and national origin.

66. The Defendant and the Daniel Boone High School administration had actual knowledge of the hostility and abuses that were being directed against J.D., including the open use of racial epithets toward J.D., including referring to him as "that Osama Bin Laden looking motherf**ker."

67. The inaction and actions of the High School administration and WCDE allowed the anti-Muslim culture in the school to flourish and further detracted J.D. away from his education.

68. Defendant, through its officials and the administrators at High School, were aware of the severe, pervasive, and disturbing behavior directed toward J.D. and acted with deliberate indifference towards the situation, which resulted in harm to J.D.

69. This harassment was severe, pervasive, and objectively offensive, to the point that it significantly impaired the Plaintiff's ability to access the educational opportunities and benefits provided by the Defendant's high school. It created a hostile environment that disrupted the Plaintiff's academic progress, social interactions, and overall well-being

70. The environment was permeated with racial and religious hostility of such severity as to alter the terms and conditions of J.D.'s educational opportunities.

71. The Defendant failed to take appropriate action to investigate the reports, discipline the offending students, or provide any form of support or protection for the Plaintiff.

72. This indifference was clearly unreasonable in light of the known circumstances and allowed the hostile environment to persist, thereby denying the Plaintiff equal access to educational opportunities at the high school.

73. This behavior by the Defendant constitutes a violation of Title VI of the Civil Rights Act of 1964, which prohibits discrimination on the basis of race, color, or national origin in programs and activities receiving federal financial assistance.

74. As a result of the School District's violation of Title VI, J.D. has suffered emotional and psychological injury, loss of educational opportunity, and other damages for which the Defendant is liable.

## COUNT III: GOVERNMENTAL TORT LIABILITY

### T.C.A. § 29-20-201 *Et Seq.*

75. The Tennessee Governmental Tort Liability Act, T.C.A. § 29-20-201 *et seq.,* waives sovereign immunity for claims that a governmental entity, the Defendant is not immune from the negligent acts and omissions of its employees.

76. The administrators at Daniel Boone High School are charged with implementing existing board policies and disciplinary procedures, and are not engaged in policy-making. Thus, their decisions, including their negligent acts and omissions, are not discretionary functions and immunity is removed for their negligence under the GTLA.

77. Pursuant to WCDE policies, the coaches of Daniel Boone High School were obligated to supervise students, including during extracurricular activities, but failed to do so.

78. It was reasonably foreseeable that unsupervised children could be in danger, including the foreseeable risk that fellow students might engage in dangerous acts in the absence of adult supervision, both at school and during extracurricular activities. Because these risks of harm are foreseeable, the Defendant established Policy 6.408, Supervision of Students, which states "Students will be under the supervision of school personnel, either

certificated or uncertificated, at all times, including play periods, and lunch periods, as well as during the school day and during extra curricular activities."

79. The Defendant also established policy 4.300 for Extracurricular Activities, which requires that "Student activities occurring before or after regularly scheduled school hours must be under the supervision of the principal or his/her designee." Daniel Boone High School administrators did not follow the policies regarding supervision of students.

80. These supervision policies were designed to prevent the type of harm that would naturally flow from a lack of supervision, namely the dangerous activities that a fellow student might perpetrate in the absence of adult supervision. It was the role of the Daniel Boone High School administrators to implement the policies established by the Washington County Department of Education. The administrators were charged with implementing existing policy and were not engaged in policy-making, therefore making their decisions operational in nature and not discretionary.

81. The Defendant breached the duties of care embodied in its mandatory supervision policies, by negligently failing to follow the supervision guidelines and negligently failing to supervise the students athletes of the Daniel Boone High School football team at the fieldhouse or at visitor locker rooms for away games, which created an environment where assault and bullying were acceptable and expected. Although some of the coaches may have been concerned with the privacy of players while they were changing clothes, it does not relieve them of the duty to supervise the players. Furthermore, the worst of the assaults occurred when the boys were fully dressed, seated in number order and ready to run out on the field to play.

82. The Defendant has established Policy 6.304 - Student Discrimination, Harassment, Bullying, Cyber-bullying, and Intimidation, the purpose of which is to prevent the harm caused by student-on-student harassment. Yet administrators at Daniel Boone High School negligently failed to implement or follow this policy, which resulted in J.D. and J.R. being physically harmed and being in reasonable fear of physical harm, causing them emotional distress and creating a hostile environment. These students also suffered a detrimental effect on their physical and mental health.

83. In addition, J.D. was repeatedly called racist names, which also violates the Defendant's policy and falls within the definitions of bullying, intimidation, and harassment. Yet, the Defendant failed and refused to stop the harassment or discipline those responsible for it.

84. Both J.D. and J.R. were repeatedly bullied, harassed, and assaulted, in violation of the Defendant's policies and falls within the definitions of bullying, intimidation, and harassment, yet the Defendant failed and refused to stop the harassment or discipline those responsible for it.

85. The Defendant is guilty of additional acts of negligence and liable for all injuries caused thereby pursuant to T.C.A. § 29-20-205 *et seq.*, including, without limitation, the following negligent acts and omissions:

   a. Schools, teachers, and administrators have a duty to exercise ordinary care for the safety of their students, and student safety is therefore a task with which DBHS and its employees are charged. The Defendant knew or should have known of imminent threats of physical harm to J.D. and J.R. but failed to take any action to prevent them, which resulted in harm;

b. Even in the absence of express policies requiring supervision of the students at all times, the coaches and administrators at DBHS are "supervisory personnel" for purposes of an independent theory of negligent supervision under the GTLA because they failed to take reasonable precautions to address the foreseeable risk that unsupervised students would commit dangerous acts.

c. As a direct and proximate cause of the Defendant's negligence and negligent supervision, the Defendant is liable to all injuries and damages of the Plaintiffs.

**COUNT IV: FAILURE TO TRAIN**

**VIOLATION OF 42 U.S.C. § 1983**

86. Schools, teachers, and administrators have a duty to exercise ordinary care for the safety of their students, and it is a task with which schools, teachers and administrators are charged. Therefore, they must be adequately trained to act as reasonable employees and exercise ordinary care for the safety of their students. This includes detecting and preventing hazing, bullying, and peer-on-peer sexual assaults and harassment, which are unfortunately foreseeable events at a high school.

87. The Defendant is responsible for the training of its employees, including the administrators and coaches at the DBHS. The Defendant is a policymaker and has a responsibility to properly train these employees on the school's policies, which include anti-bullying policies and mandates for supervision of students.

88. However, the Defendant failed to adequately train its employees on these policies, resulting in deficient training that was not suitable for the tasks the administrators and coaches were required to perform, including the prevention of bullying, harassment, and hazing, and the supervision of students.

89. The Defendant failed to train its employees on how to properly supervise students and student athletes, and it failed to train its employees on the proper detection and elimination of hazing within its athletics programs.

90. The Defendant school board was deliberately indifferent to the rights of the Plaintiffs with whom the untrained administrators and coaches at DBHS came into contact. Despite knowing the importance of these WCDE policies in ensuring student safety, the Defendant did not take adequate steps to ensure that employees were trained and able to implement these policies.

91. The failure to provide adequate training directly and proximately caused the Plaintiffs' injuries. If the administrators and coaches had been properly trained on the school's policies, including training on proper supervision of students and student athletes, as well as the elimination of hazing in its athletic programs, they would have been equipped to prevent the pervasive bullying, harassment, and hazing that took place, and the Plaintiffs would not have been injured.

92. As a result of these § 1983 violations, the Plaintiffs have suffered and continue to suffer damages, including physical injury, emotional distress, pain and suffering, loss of enjoyment of life, and disruption to their educational progress.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully pray that this Court:

1. Declare that the actions, conduct and practices of Defendant violated the rights of the Plaintiffs under Title IX, 42 U.S.C. § 1983, and the Tennessee Governmental Tort Liability Act;

2. Issue an injunction, directing Defendant to take all necessary steps to eliminate the hostile environment at the high school and prevent its recurrence;

3. Award compensatory damages to Plaintiffs in an amount to be determined at trial for past and future pain and suffering, emotional distress, loss of enjoyment of life, and other non-economic damages resulting from Defendant's violations of Title IX, 42 U.S.C. § 1983, and the Tennessee Governmental Tort Liability Act;

4. Award compensatory damages for any past, present, and future economic losses suffered by Plaintiffs as a result of Defendant's violations of Title IX, 42 U.S.C. § 1983, and the Tennessee Governmental Tort Liability Act;

5. Award Plaintiffs their reasonable attorneys' fees, expert witness fees, and other costs of this action under 42 U.S.C. § 1988, and any other applicable law;

6. Order all other such relief as this Court deems just and proper to fully and fairly compensate Plaintiffs for their injuries and losses, and to punish and deter Defendant from engaging in similar conduct in the future.

**Plaintiffs demand a trial by jury for all issues so triable.**

Respectfully submitted,

THE BLACKBURN FIRM, PLLC

*/s/ Gary Blackburn*
W. Gary Blackburn (#3484)

*/s/ Bryant Kroll*
Bryant Kroll (#33394)
424 Church Street, STE 2000
Nashville, TN 37219
P: (615) 254-7770
F: (866) 895-7272
gblackburn@wgaryblackburn.com
bkroll@wgaryblackburn.com
*Attorneys for Plaintiffs*
